Per curiam delivered by
Kent C. J.
This is a clear cafe for the plaintiffs. Their claim is founded on found principles, in the law of infurance. The defendants abandon, and the plaintiffs accept and pay. They were then fubftituted for the defendants, and fucceeded to the benefit of the acts of the agent abroad, in relation to the property in queftion. The mailer and merchants at Malaga, adted, nominally, as agents for the defendants, but, in reality, they were agents for the party having the ultimate claim to the property. What they did was, undoubtedly, founded on previous instructions from the defendants, and on the connexion that the defendants had with the property, as former proprietors, and exifting claimants. When the defendants abandoned the ihip and cargo, and received their indemnity from the plaintiffs, they renounced all concern in the interference of their agents, and transferred, to the infurer, the. refult of that interference. This is fettled doitrine in refpeft to abandonment. The prefent cafe is analogous to that of capture and fubfequent ranfom, where, upon an accepted abandonment, the whole benefit of the compofition, and the effects reclaimed, go to the infurer.
There is no ground for confidering the purchafe, by the. houfe of Grevigne, Sc Co. as made for the defendants, in '¡the character of ftrangers to the property. It was made for the. defendants as having an intereft in it, and with intent to mitigate the lofs. The law of abandonment, applies to fuch a cafe with the greateft juftice and good policy, in making the previous inftru&ions, and all acts of the agent, enure to the in-furer. To give to the infured a full indemnity on his policy, and aifo the advantages of thefe efforts of the agents to repair the lofs, would be doubly injurious to the infurer. It would deprive him of the benefits of his fubftitution, tend to ilacken the exertions of agents to recover the property, and invite them to refort to fraudulent fpeculations upon the lofs. It cannot be admitted, that the condemnation at Malaga, put an end to the intereft of the infured, fo as to rentier a purchafe, by him, thereafter, equivalent to a purchafe by a ftranger. In the cafe of MPMafiers v. Shoolbred, 1 Efp. Rep. 237, the veffel was condemned by the French coniul, fold by him as a prize, and the captain purchafed her at fuch fale, on account of the owners. But it was confidered as fo much property *284 recovered by the allured, and it was likened, by Lord Kenyan,. to the cafe of ranfoms. The condemnation, and change thereby 0f the legal title, was not coniidered as any impediment to the dodtrine, that the affured by a recovery, in that mode, had fuftained only an average lofs. That cafe differs from this in one particular, only ; that here was an abandonment and payment of a total lofs. It was admitted, in the cafe I have cited, that if the infured, upon the capture, had abandoned, he might have recovered a total lofs. But then, upon .the very principles of abandonment, (and which that cafe did not mean to queftion) the property ib recovered, to ufe Lord Kenyon’s expreffion, muft have enured to the benefit of the in-furer. It is a principle perfedtly well fettled, that abandonment has a retrofpedlive effedt, fo as to make the infurer to be regarded as the proprietor ab initio. The infurer is put in the place of the infured, and the latter is coniidered, as if he had not exijled, according to the language of fome of the books. Putting out of view, as the cafe in Efpinajfe certainly does, any material operation from the fadl of condemnation, I cannot fee any difficulty in the queftion. Suppofe there had not been a condemnation, but the infured had, by their agent, purchafed, or recovered the property, immediately upon the capture, and before this technical change of title by condemnation, I apprehend there would, in that cafe, be no queftion, but that the affured, when he abandons, parts alfo with the benefit of his repurchafe. The confequences would, otherwife, .be moft unjuft towards the infurer, and the. infured would turn his contradi, from one of indemnity into one of gain. If the condemnation in this cafe, creates no difficulty, no other exifts. .The infurer was not bound, unlefs he pleafed, to accept of the purchafe at Malaga -, nor was the infured. The agent pur-chafed at- his peril. There can be no rifle, therefore, that this dodtrine will involve infurers in hazardous mercantile concerns. They have nothing to do with them, but at their eledtion. - After an accepted abandonment, they can, if they • pleafe, accept of the repurchafe by the agent, and affirm his acts-, or they may leave them to fall upon the agent. The French ordinance of marine, has made provifion for this very cafe of a repurchafe after capture, and it ordains that the infu-rers may take the compofition for their own benefit, or they inay, at their eledtion, refufe to have any thing to do with the repurchafe, and content themfelves with paying a total lofs. So alfo, on the other hand, the affured may refufe to ratify *285 the repurchafe, and for this reafon, fays Valin, it behoves the agent to aft with great circumfpection and prudence. Grd. Art. 66 & 67. 2 Val. 159, 160. See alfo 1 Emer. 464. & §21. I agree that the infurer is always bound to decide promptly, whether or no, he claims the benefits of the re-purchafe, but as that point is not drawn in queftion in the prefent cafe, I intend that no objeftion exifts on that ground. The repurchafes, authorized by the French law, are as applicable to cafes where the veffel has been condemned, as where ihe has not. For by the law of nations, asun-derftood when thefe ordinances were eftabliíhed, a capture and carrying into port, or infra prafidia, fo as to take away from the captured the hope of recovery, as effeftually changed the property, as a fentencc of condemnation will do at this day.
In the cafe of Gofs v. Withers, 2 Burr. 694, the doctrine of capture underwent a very learned inveftiga'tion, and Lord Mansfield, in giving the opinion of the court, obferved that if after condemnation the owner recovers, or takes his captured ihip, the infurer can be in no other condition, than if ihe had been recovered or retaken before condemnation. The reafon is plain from the nature of the contract. The iniurer runs the riik of the infured, and undertakes to indemnify. He muft, therefore, bear the lofs aftually fuftain-ed, and can be liable to no more. So that, if after condemnation, the owner recovers the ihip in her complete condition, but has paid falvage, or been at any expenfe in getting her back, the insurer muft bear the lofs fo aftually fuf-tained. He obferves in another place, that no capture by an enemy, though condemned, can be fo total a lofs, as to leave no poffibility of recovery, page 696.
I agree that after a condemnation the property is changed, fo that a complete title can be transferred from the captor to a third perfon. But this rule does not apply between infurer and injured, fo as to authorize the infured to be that pur-chafer, at the very time of the lofs, and with the exprefs view of indemnifying himfelf againft a part of it. If he does, and ftill claims a total lofs from the infurer, he muft tender to him the benefit of that purchafe. This rule is founded on the cleared: juftice and is efiential to prevent fraud. As long as the property remains in the hands of the captor, although a condemnation has taken place, there is ftill the pofi-Ability of a recovery. There ftill exifts, as a rod over the captor* the right of appeal, and this, and other "circum- *286 fiances, which may be peculiar to the cafe, will always induce the chance of a favorable compoiition and purchafe, on the part Qf the claimant. That chance is valuable, and ought, on abandonment to go to the infurer. In the prefent cafe, how-everj the allured takes his total lofs from the underwriter, makes his favourable terms with the captor, and infills on retaining both. This is not to be permitted, and I cannot per-fuade myfelf, that it ever was permitted by the infurance law of any country.
The cafe of 'Saidler and. Craig i). Church, decided in this court, in July term, 1799, is an authority in point, and mult govern the prefent cafe. That was an infurance on a veiTel, •which was captured, condemned, and afterwards purchafed by the mailer, on account of the owners, of whom he was one. ■ As foon as the capture was known, and before the condemnation and purchafe, the infured abandoned, but after the purchafe the owners fitted out the veffel, and fent her on another voyage. The court held, that the allured by affirming the purchafe of the captain, as their agent, had waived the abandonment, and turned the total into an average lols. That if the infured liad intended to purfue their claim to a total lofs, they ought not to have ratified the a£l of their captain, but left the infurer to reap at his election, the benefit of that purchafe. This cafe cannot be feparated from the prefent one, by any folid diftinction, and I ihould be ferry to queftion, in any degree, the authority of that decifion. The cafe of Abbott v. Broome, 1 N. T. T. R.. 292, was not intended, in any refpedt, to ihake the force of it. I took no part, in the latter decifion, but it appears, from the report of the cafe, that it was clearly to be diftinguilhed * from that of Saidler and Craig v. Church, and the latter appears to have been uniformly confidered by the counfel and court, as a valid authority. ' I conclude, therefore, both from authority and principle, that the plaintiffs are entitled to re- . cover,
Livingfton J.
The more I reflect on the nature of this claim, the more extraordinary, not to fay extravagant, it appears. I am at a lofs to difeover any ground on which it can be fupported. Thofe relied on are, that the purchafe of the cargo being in trull for its ultimate owners, the plaintiffs muft be exclufivcly entitled to the profits, inafmuch as by the abandonment, and payment of a total lofs, they became, proprietors thereof. Thefe arguments proceed on the *287 uypothefis, that goods even after condemnation, belong to the original proprietors, or, in cafe of abandonment, to the affii-rer, and that the allured and his factors continue, after fuch an event, his agents, and are authorized to purchafe for him the whole, or any part of the property condemned. But, neither of thefe pofitions will be found corredt. After condemnation there is an end of the interefi: both of the owner and underwriter in the property confifcated, except fo far as regards the right of appeal ; and, even in cafe of reverfal of the fentence, neither party would receive the property in kind, but its appraifed value, or the price at which it had been fairly fold. Thus, if an appeal had been iuccefsfully profecuted here, the underwriters, in virtue of the abandonment, would have been entitled, at moil, to the fum at which the captor fold the property, admitting the fale to have been fair, and could not by adtion of trover, or otherwife, purfue the property itfelf, the title to which had been thus changed by condemnation. The moment fentence is pronounced, the right of the captors to fell is complete, and to fuch a fale all the world are, or may be parties. The afiurer may buy if he pleafe, fo may the original proprietor, or any Arranger. He who does fo, does it at his own peril; and as the owner, in cafe he purchafe, cannot throw the lofs, if any, on the underwriter, fo neither can the latter come in for the profits refulting from the bargain, unlefs, indeed, the affined continue, as is alleged, agent of the afiurer. But whence is this authority derived ? Is it from the policy ? That confers a power only to “ fue, labor and travel, in cafe of misfor- “ tune, for the defence, fafeguard, and recovery of the “ goods infured, without prejudice to the infurance."
From thefe terms it is evident, the authority of the affined and his fadtors, extends only to cafes in which, by their exertions, the property may be refeued from an impending peril. That is, they may ufe all diligence, and incur any ex-penfe, on the underwriter’s account, to prevent a condemnation. But never before was it urged, that he, or his confignees had a right to purchafe property for the account and riik of the underwriter. Mifchievous, indeed, would fuch an unlimited authority prove to the underwriters themfelves. They would become merchants, as well as underwriters, and be expofed to all the hazards to which the indiferetion or avarice of foreign agents, chofen by others, might expofe them. They would never know when their liability on a policy ceaf- *288 ed. After paying their whole fubfcrijption, as they ' have done Here, they might be called on for a fecorid lofs, greater poflibly than the firft, occafioried by an imprudent fpeculation abroad, which they themfelves, if on the fpot, would not have made. What has been done in this cafe, ihews the Hazards to which they would be expofed,' if the power of the allured or His agents, be as great as has been afferted. Meflrs. Grevigne, & Co. firft purchafe the cargo, and that before its condition is known ; they then fell it, and after reimburfing themfelves, inveft the balance in brandy and wine, for account of the defendants, to whom they are accordingly ihipped. Thefe brandies and wines are fold by the defendants in New-York, and becaufe a profit has accrued, the plaintiffs very modeftly claim it. But let the cafe be reverfed." If there had been a lofs, which might well have happened, in a tranfaction fomewhat complicated, would the underwriters have been willing to make it good ? If the Apollo’s cargo, as was fup-pofed, had been greatly damaged, if the markets had fallen at Malaga, and a great lofs had enfued in that way, or by bad debts'; if the Apollo had been ihipwrecked on her return to the United States, and a fecond total lofs had thus taken place, or if the brandy and wine had come to a bad market here, how would the plaintiffs in either of thefe cafes, have been aftonifhed to be called on to make good the injury ! They would have faid, and there would have been no anfwer-ing them, “ Shew us the authority under which you have “ been trading, bn our account. You have been fpeculating <c for your own benefit, and at your own rifle, and arc “ now for ihifting the lofs on us/’ If the defendants could not have compelled the plaintiffs to bear them harmlefs, and that they could not, with me admits no doubt, there muft be an end to this queftion. It cannot be endured, nor did the plaintiffs’ counfel pretend, that underwriters, under circumftances of this kind, might filently wait until a clofe of the adventure, and then announce their éleñion, whether it ihould be on their1 account or not. It would be unjuft, in the extreme, to let them participate in, pay, take the whole of the gains, without furniihing any portion of the capital, and yet exonerate them from all lofs. £¡hii fentit commodum, fentire debet et onus, but here the underwriters would reap all the advantage, leaving the allured to bear the whole burthen, and to fubmit to a lofs without even a chance of benefit to themfelves. If it be infilled that the plaintiffs *289 mu ft have made good a lofs on this adventure, and fuch was the pofition of their counfel, why are we not told, under what form of a ¿lion this refponfibility can be enforced, or on what claufe in the policy, or on' what other undertaking, on their part, it can be fupported ? The truth is, it is the firft time a pretenfion of this kind has ever been advanced, and the plaintiffs themfelves, although there be a profit here, will foon be convinced it is their intereft to abandon fimilar claims in future. • Whatever they may think, it will not be long before they will find themfelves lofers, if we give our fanction to the principle on which, alone, they can fucceed. " Numerous will be the claims made on them for bad fpeculations of this kind, while thofe which prove profitable will be carefully concealed from their view. Nothing is more common than fales for the benefit of parties, ultimately concerned. . This arifes from the uncertainty, which often "exifts at the time of fale, as to the real owner. But feldom, if ever, have we before heard of a purchafe on account of an uncertain vendee. A purchafe is always made for the party whofe money is employed. If fo, what difficulty can remain as to the perfons entitled to the profits in this inftance ? Did the plaintiffs fupply funds ? Not a cent. Would they have paid a bill drawn by Grevigne, & Co. for the amount of the purchafe ? They would have regarded fuch a meafure as an unwarrantable liberty in thofe gentlemen, and without ceremony have diiho-noured their draft.
236. r Efp. Res.
But this demand, it is faid, is not without precedent, and we are referred to a decifion in England, and to another of our own, as authorities in point. The cafe of MiMaJlers $S* Shoolbred, decided by Lord Kenyon, at nifi pritis, refembles in nothing the one now under confideration. It was an aftion on a policy, on a fhip, which had been captured and purchased by the mafter, after condemnation, for the owners. As m abandonment had been made, while the veffel was in the hands of the captors and the lofs, continued total, Lord Kenyon con-fidered the owners entitled to recover only the fum paid to the captors, with certain repairs that had been rendered ne-celfary by the capture. The fhip having come to the owner's poffefiion, before an abandonment, or a fuit brought, he con-fidered it as immaterial how this reftoration took place, and regarded the price paid, as the quantum of the lofs occafioned by the peril infured againft. So, fays he, if a ihip be funk and weighed up again, and thus reftored to the owners, they have *290 only a right to go for an average lofs. It deferves notice, that even in this cafe, his Lordihip, and the counfel, admitted, “ that the infured might have abandoned and thus made the “ lofs total.” It inevitably follows, that the underwriters, if an abandonment had taken place, would have had nothing to do with the purchafe. If the defendants here, were fuing on the policy, and had made no abandonment in feafon, they would probably have recovered nothing more than the fum which they paid for the cargo ; but having abandoned, they would, under this very opinion of Lord Kenyon, be entitled to claim as for a total lofs, notwithftanding the purchafe in Ma-laga. This decifion, therefore, though cited by the plaintiffs, is an authority direftly againft them. They have been equally unfortunate in their allufion to the cafe of Saidler and Craig v. Church, in this court. That action was alfo on the policy, and whether the lofs were total, or partial, was the only queftion. The veffel infured, having been captured, libelled in the admiralty, and condemned, was purchafed by the maf-ter for the owners, who had fitted her out, and fent her on another voyage. The owners, on advice of the capture, but without knowledge of the condemnation or the purchafe, abandoned to the underwriters. The court gave judgment as for a partial lofs only, confidering the fum paid by Saidler & Craig, as the amount thereof. Although this was going further than was done in the cafe of MiMaJlers and Shoolbred, where there was no abaftdonment, it will not help the "plaintiffs, for in neither of "thefe inftances were the veifels, when repur-chafed, regarded as belonging to the underwriters, but, on the contrary, to the affured, and becaufe they had been re-ftored to them at a certain price, the fum thus paid was con-fidered as the injury fuftained by the difafter, by a reimburfement whereof, a complete indemnity would be obtained. If thefe veifels had belonged to the affurers, as it is pretended thefe goods did, they might have paid as for a total lofs in the firft inftance, and then fold, or fitted them out themfelves, or called on the plaintiffs for what they might have earned. JBut if this laft decifion be at all favourable to the prefent claim, it is greatly ihaken, if not entirely overturned, - by that of Abbott v. Broome. Being of counfel in both thefe caufes, no opinion was given, by me, in either. The judgment laft rendered, however, as it refpefts the effeti of a purchafe by the allured, is more confonant to the law of in-furance, than the principio adopted in the former. It has *291 ever appeared to me, that with a purchafe after abandonment and condemnation, the underwriter has nothing to do; and that it is better for him it fhould be fo, and I ihould have thought that iince the cafe of Abbott v, Broome, fuch would neceffariiy have been our judgment were the quefdon again to occur 3 for mqít certainly the fails there difclofed, were much itronger againft the afiured’s pretenfions to a total lofs, than ihofe which appeared in the other, and yet they were determined to be well founded. Saidler and Craig did not purchafe until after a capture and condemnation, to neither of which were they, in any degree, acceffory 3 but the furvey, and condemnation, in the other inftance, were produced on the application, and in a great meafure at the requeft of the fuper-cargo, who was a part owner. In the iirft cafe, to practice a fraud was impoflible ; and yet nothing is more eaiy, or more common, than to procure partial furveys, and fraudulent condemnations, in foreign ports, when an aífured wiihes to break up a voyage at the expenfe of an underwriter. If then, the cafe of Saidler and Craig v. Church, be confidered as no authority iince that of Abbott v. Broome, which would have been my opinion, the plaintiffs are not only without the femblancc of a precedent of our own to juitify their demand, but, as far as there is any analogy between the prefent cafe and that of Abbott and Broome, the determination of this court is againft them.
It was faid, on the argument, that if the allured ranfom, the underwriter is bound by his aft, and muft pay, whether it be a good or bad bargain. This is true, for fuch aft being within his authority, lie may, to avoid the greater evil of condemnation, or entire lofs, pay a fair price for a reiteration of the property, which then belongs to himfelf and not to the underwriter, who is only held to make good the lofs occafíoned by the capture, which is the fum paid as a ranfom. The effeft of a ranfom is not to change the property, but to fettle the extent of the lofs. Upon the whole I am of opinion, that after a capture, a condemnation, an abandonment, and payment, as for a total lofs, the affurer cannot call on the merchant to account for the profits which he may have made, in confequence of his agent’s purchafing, with his funds, the cargo of the captors, fubfequent to a condemnation 3 but that fuch purchafe, being with the money of the aífured, muft be at his rifle, and for his exclufive benefit, and that the defendants muff of courfe have judgment.
*292 N. B. Thompfon J. not having heard the argument gave no opinion.

 Vide 1 Vol, 3°3‘

 N. Y.T. R. ,292-